IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

TONY RAY STRODE               )
                              )
v.                            )      No. 3:12-0378
                              )      Magistrate Judge Holmes
CAROLYN W. COLVIN             )
    Acting Commissioner of    )
    Social Security           )

**MEMORANDUM**

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying Plaintiff's claim for a period of disability and Disability Insurance Benefits ("DIB"), as provided under the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry No. 12), to which Defendant has responded (Docket Entry No. 13). Plaintiff has also filed a subsequent reply to Defendant's response (Docket Entry No. 16). This action is before the undersigned for all further proceedings pursuant to the consent of the parties and the District Judge in accordance with 28 U.S.C. § 636(c) (Docket Entry No. 21).

Upon review of the administrative record as a whole and consideration of the parties' filings, Plaintiff's motion is GRANTED. For the reasons stated herein, the Court REVERSES the decision of the Commissioner and REMANDS this case for further administrative proceedings.

## I. INTRODUCTION

Plaintiff filed an application for a period of disability and DIB on January 16, 2009. *See* Transcript of the Administrative Record (Docket Entry No. 10) at 10, 38.[1] He alleged a disability onset date of September 15, 2008. AR 38, 40, 105. Plaintiff asserted that he was unable to work because of muscle disorders, ligament and fascia resulting from knee surgeries, degenerative joint disease in the bilateral knees, arthritis in his feet, and hypertension. AR 38, 40, 150, 168-172.

Plaintiff's applications were denied initially and upon reconsideration. AR 38-41. Pursuant to his request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ David Ettinger on May 18, 2011. AR 20. On June 14, 2011, the ALJ denied the claim. AR 7-9. The Appeals Council denied Plaintiff's request for review of the ALJ's decision (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on June 14, 2011. AR 7-9. Based upon the record, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since September 15, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s) as generally numbered in large black print on the bottom right corner of each page of Docket Entry No. 10. Occasionally, the AR page number is in small type at the bottom right corner of the page. All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s) where appropriate.

>                                         \*\*\*
>
> 3.  The claimant has the following severe impairments: status post left shoulder surgery, status post multiple left knee surgeries, status post right knee surgery, and bilateral foot osteoarthritis (20 CFR 404.1520(c)).
>
>                                         \*\*\*
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
>                                         \*\*\*
>
> 5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that he cannot more than occasionally climb, balance, stoop, kneel, crouch or crawl; cannot reach at or above shoulder level with the non-dominant left arm; and cannot walk without a cane.
>
>                                         \*\*\*
>
> 6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
>                                         \*\*\*
>
> 7.  The claimant was born on December 26, 1962, and was 45 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).
>
> 8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
>                                         \*\*\*
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from September 15, 2008, through the date of this decision (20 CFR 404.1520(g)).

AR 12-16.

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A

reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B. Determining Disability at the Administrative Level**

The claimant has the ultimate burden of establishing an entitlement to benefits by proving his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 432(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), and 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which claimant lives, or whether a specific job vacancy exists, or whether claimant would be hired if he applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that he is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment that meets the

12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra; Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render him presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to his past relevant work. *Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all of the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs*, *supra.*

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005)

(quoting *Walters v. Comm'r of Soc. Sec.*, 402 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

### C. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, but found at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 12. At step four, the ALJ found that Plaintiff is unable to perform past relevant work. AR 14. At step five, the ALJ found that Plaintiff's RFC allowed him to perform sedentary work as defined in 20 C.F.R. 404.1567(a) with express limitations to account for his severe impairments, and that considering his age, education, work experience, and RFC,

there are jobs that exist in significant numbers in the regional and national economy that Plaintiff can perform. AR 15-16.

### D. Plaintiff's Assertions of Error

Plaintiff argues that the ALJ erred by: (1) failing to give proper weight to the opinion of his treating physician, (2) failing to properly evaluate Plaintiff's credibility, and (3) relying on the jobs identified by the Vocational Expert ("VE"). DE 12-1 at 1. Plaintiff therefore requests that this case be reversed or, alternatively, remanded pursuant to sentence four of 42 U.S.C. § 405(g). *Id.* at 15.

> Sentence four of 42 U.S.C. § 405(g) states the following:
>
> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). The Court will address each of Plaintiff's assertions of error below.

**1. Whether the ALJ gave proper weight to the opinion of Plaintiff's treating physician.**

Plaintiff claims that the ALJ violated regulations and relevant case law by failing to give controlling weight to the opinion of Dr. David Sables, one of his treating physicians. Dr. Sables, a podiatrist, diagnosed Plaintiff with osteoarthritis and severe degenerative changes in his feet in June of 2010. AR 289. On February 11, 2011, Dr. Sables completed a Medical Source Statement

("MSS"), in which he opined that Plaintiff was limited during an eight-hour workday to sitting for three hours, standing for one hour, and walking for less than 45 minutes. AR 304. Notably, Dr. Sables also found that Plaintiff would never be able to perform operation of foot controls with his right foot. AR 305.[1]

Plaintiff relies primarily on Social Security Ruling ("SSR") 96-2p, which states that the ALJ's opinion,

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5. This ruling also requires that the ALJ provide "good reasons" for the weight given to the treating physician. *Id. See also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). Plaintiff argues that despite this mandate, the ALJ failed to provide good reasons for rejecting Dr. Sables' opinion. DE 12-1 at 10.

The ALJ stated the following with respect to the MSS completed by Dr. Sables:

> I do not give significant weight to the opinion of Dr. Sables that [Plaintiff] would need to lay down for most of an eight-hour workday; and that he could never climb, stoop, or kneel . . . When Dr. Sables offered his opinion on February 11, 2011, he had not seen [Plaintiff] since June 24, 2010, and had seen him on only three occasions since August 25, 2008.

AR 14. Plaintiff argues that the ALJ's rejection of Dr. Sables' opinion based solely on his limited number of visits with Plaintiff is incongruent with his decision to give "some weight" to the opinions of the state agency medical consultants who never treated Plaintiff. DE 12-1 at 10. Plaintiff also correctly notes that Dr. Sables' opinion does not include a restriction requiring Plaintiff to "lay down for most of an eight-hour workday," a point that is conceded by

---

[1] Dr. Sables did not provide an opinion regarding Plaintiff's capacity to operate foot controls with his left foot.

Defendant. DE 13 at 7. It is unclear where the ALJ derived this restriction, as he misattributed it to Dr. Sables' MSS. AR 14.

Defendant argues in response that the ALJ properly discounted Dr. Sables' MSS because the opinion contained therein is not supported by medical evidence. DE 13 at 7-8. Defendant points to a record from August of 2008 in which Dr. Sables allegedly opined that Plaintiff's foot complaints could be controlled with the use of orthoses. *Id.* at 8. The Court notes that during that 2008 visit, Dr. Sables actually stated that the foot condition could be controlled with orthoses because Plaintiff exhibited "no gross pain [or] foot complaints." AR 295. However, in that same note, Dr. Sables also stated that Plaintiff "may need [fusion surgery] in future." AR 295. Moreover, Plaintiff specifically complained of increasing foot pain to Dr. Sables almost two years later, which prompted Dr. Sables to recommend an MRI of Plaintiff's feet. AR 294.

Defendant claims that while the ALJ's discussion of Dr. Sables' report was "not extensive," the ALJ "was aware of the report and did discuss it to some extent." DE 13 at 7. However, the Court does not agree that the ALJ adequately considered Dr. Sables' opinion. In fact, the only specific restriction rejected by the ALJ, one requiring Plaintiff to "lay down" for the majority of a typical workday, was not even part of Dr. Sables' opinion. As such, the entirety of the ALJ's rejection of Dr. Sables' opinion is contained in a single sentence: "When Dr. Sables offered his opinion on February 11, 2011, he had not seen [Plaintiff] since June 24, 2010, and had seen him on only three occasions since August 25, 2008." AR 14. The Court finds that this explanation falls short of the standard contemplated by 20 C.F.R. § 404.1527(c)(2), which requires that the ALJ provide "good reasons" for the weight given to a treating physician's opinion.

The Sixth Circuit has held that a single reason provided by an ALJ for rejecting the opinion of a treating physician can be compliant with 20 C.F.R. § 404.1527(c)(2) if it "reaches several of the factors that an ALJ must consider when determining what weight to give a non-controlling opinion by a treating source[.]" *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009). Such factors include the length of the treatment and the frequency of examination (20 C.F.R. § 404.1527(c)(2)(i)), the nature and extent of the treatment relationship (20 C.F.R. § 404.1527(c)(2)(ii)), supportability (20 C.F.R. § 404.1527(c)(3)), consistency (20 C.F.R. § 404.1527(c)(4)), and specialization (20 C.F.R. § 404.1527(c)(5)). However, the ALJ in this case appears to have only considered the frequency of examination by Dr. Sables in rejecting his MSS. This ignores the other factors required by 20 C.F.R. § 404.1527(c)(2), including the consistency of Dr. Sables' opinion with the record as a whole, and his specialization, which is especially relevant given that he is a practicing podiatrist.

Instead, the ALJ gave "great weight to the opinion of [Plaintiff's] treating surgeon that [Plaintiff] could return to work with restrictions." AR 14. This ostensibly refers to the opinion of Dr. Timothy Steinagle, D.O., who stated on June 30, 2009 that Plaintiff "may return back to work with restrictions on his attending physician's report." AR 223. While the ALJ properly evaluated this opinion, there is no indication that Dr. Steinagle ever treated Plaintiff for any symptoms relating to his feet. His office notes indicate that he treated Plaintiff solely for knee problems. This is significant because, conversely, Dr. Sables' opinion refers exclusively to Plaintiff's foot condition. Dr. Sables based his opinion on the "significant osteoarthritis" found in Plaintiff's bilateral midtarsal and subtalar joints (AR 304), a diagnosis that was supported by x-rays and an MRI. AR 249, 291, 294. Despite this, the ALJ gave more weight to the opinions of the state agency medical consultants even after acknowledging that such opinions were provided

prior to the x-rays and MRI that demonstrated severe degenerative changes in Plaintiff's feet. AR 14. As such, there is no evidence referenced by the ALJ that contradicts Dr. Sables' opinion regarding the functional limitations caused by Plaintiff's condition.

Although an ALJ is not required to discuss every piece of evidence in the record, he may not ignore an entire line of evidence that is contrary to his decision. *Craig v. Colvin*, No. 3:12-CV-00333, 2014 WL 1287178, at *12 (M.D. Tenn. Mar. 28, 2014). Here, the ALJ discounted the opinion of Dr. Sables regarding Plaintiff's foot condition without citing any evidence that refutes Dr. Sables' MSS. The ALJ also erroneously identified a restriction that was not included in Dr. Sables' opinion. Inaccuracies and incomplete analysis can serve as a basis for remand. *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 749 (6th Cir. 2011). In this case, the ALJ misidentified the restrictions set forth by Dr. Sables, and also failed to reference any evidence that contradicted Dr. Sables' opinion regarding the severity of Plaintiff's foot condition. For these reasons, the Commissioner's decision must be reversed.

**2. Whether the ALJ failed to properly evaluate Plaintiff's credibility.**

Plaintiff next argues that the ALJ did not properly assess his credibility, in violation of SSR 96-7p.[2] Plaintiff recites portions of SSR 96-7p in his brief, which state in part that the ALJ's credibility determination must do more than "simply . . . recite the factors that are described in the regulations for evaluating symptoms." SSR 96-7p, 1996 WL 374186, at *2. Plaintiff also notes that the ALJ is not permitted to "make a single, conclusory statement that 'the individual's allegations have been considered[.]'" *Id*.

---

[2] The Court notes that SSR 96-7p has been superseded by SSR 16-3p, which became effective on March 28, 2016. Plaintiff's complaint was filed in April of 2012, however, and thus SSR 96-7p applies to the Court's analysis of this claim.

The Court is not persuaded by Plaintiff's reliance on SSR 96-7p. The ALJ's credibility determination clearly involved more than a conclusory statement:

> I do not fully credit [Plaintiff's] testimony. He has not complained of similarly severe limitations to his medical providers. He had no documented inpatient treatment. He has only two documented outpatient visits since August 11, 2009. As noted above, he left work for reasons unrelated to his impairments, and he testified that he was unable to find new employment because of his age and economic conditions. He has not pursued vocational rehabilitation services.

AR 14. Despite acknowledging the ALJ's stated reasons for discounting credibility, Plaintiff claims that the ALJ unfairly "chastised" him because he "accepted a buy-out from his employer." DE 12-1 at 13-14. However, this is not an accurate representation of the ALJ's discussion. Plaintiff clearly admitted during his hearing that he accepted a buyout from his employer to avoid being fired, and subsequently attempted to find another job:

> I . . . saw some employment and things I thought I could do, but at that time, over 10 percent of the country was out of work. And you know, at my age, I just wasn't a viable employee, you know, having to compete with everybody that's younger and having these restrictions.

AR 31. While the Court is certainly sympathetic to Plaintiff's struggles to find employment, his testimony indicates that this was primarily due to reasons unrelated to his alleged impairment. After accepting a buyout from his employer, he stated that he was unsuccessful in finding another job because he "didn't have . . . the right education for it." AR 31. Based on this testimony, the ALJ reasonably drew a negative inference regarding the extent of Plaintiff's allegedly disabling condition. *Cf. Horak v. Astrue*, No. 3:08-CV-347, 2010 WL 797915, at *7 (E.D. Tenn. Mar. 3, 2010) (Holding that it was reasonable for an ALJ to discount the claimant's credibility based on his determination that the claimant left his job and subsequently failed to seek additional employment for reasons unrelated to his alleged symptoms).

Nonetheless, Plaintiff claims that the ALJ erred by failing to consider his history of steady employment, which Plaintiff argues bolsters his credibility. DE 12-1 at 14. An ALJ, however, is not required to discuss every piece of evidence submitted by a party, and an ALJ's failure to cite specific evidence does not demonstrate that such evidence was not considered. *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005) (internal citation omitted). Plaintiff's additional argument that the ALJ violated SSR 97-6p by not explicitly stating the amount of weight given to Plaintiff's testimony similarly fails because the ALJ is not required to assign a specific value to such testimony. While SSR 96-7p requires that the ALJ's credibility findings be "sufficiently specific," the Sixth Circuit has interpreted this to mean that "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248. An ALJ is instead required to provide justification for his determination, which the ALJ in this case accomplished by listing multiple reasons for discounting Plaintiff's credibility. AR 14

An ALJ's credibility determination is accorded great weight and deference because the ALJ has the unique opportunity to observe an individual's demeanor while testifying. *Jones*, 336 F.3d at 476. Because the ALJ provided substantial, legitimate evidence to support his finding, the Court declines to second-guess his decision. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

**3. Whether the ALJ erroneously relied on the jobs identified by the VE.**

Plaintiff's final assertion of error states that the ALJ erred by identifying jobs for Plaintiff in the opinion, in accordance with the testimony provided by the VE, that he cannot actually

perform. Plaintiff claims that the RFC ascribed by the ALJ prevents him from performing these designated jobs, which include stuffer, surveillance systems monitor, and automated machine operator. DE 12-1 at 15. Plaintiff specifically argues that he would be unable to perform the stuffer position in light of its required use of a foot pedal, and would also be unable to perform the automated machine operator position due to its requirement that the employee pull a leverage bar. DE 12-1 at 15.[3] As such, Plaintiff claims that the ALJ inappropriately relied on the VE's testimony that Plaintiff would be able to perform such jobs.

The RFC assigned in this matter limits Plaintiff to sedentary work, with additional restrictions that he can only occasionally climb, balance, stoop, kneel, crouch, and crawl, cannot reach at or above shoulder level with his left arm, and cannot walk without a cane. AR 12-13. Thus, while the ALJ determined that Plaintiff's bilateral foot osteoarthritis represented a severe impairment (AR 12), he did not find that such condition caused functional limitations. This is not an unreasonable finding, as disability is determined by the functional limitations imposed by a condition, and not the mere diagnosis of it. *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (internal citation omitted). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis . . . says nothing about the severity of the condition."). Therefore, the ALJ did not commit reversible error by relying on the VE's testimony regarding Plaintiff's ability to perform the functions of a stuffer.

Similarly, the assigned RFC does not necessarily preclude Plaintiff from performing the duties of an automated machine operator. Plaintiff alleges that the DOT job description is not feasible for him because it requires that he "pull on leverage bar to force blank against abrasive wheel." DE 12-1 at 15. However, the RFC only prevents Plaintiff from reaching at or above

---

[3] Plaintiff does not address his ability to perform the surveillance systems monitor position in his brief.

shoulder level with his *left* arm, which is his non-dominant arm. AR 12-13. Nothing in the RFC prevents Plaintiff from performing this job task with his dominant right arm.

Nevertheless, in light of the Court's determination that the ALJ failed in his evaluation of Dr. Sables' opinion, as discussed *supra*, the Court finds that this case should be remanded for further administrative proceedings, including a rehearing of the case before a new ALJ and issuance of a separate decision. Because an additional hearing regarding Plaintiff's condition will likely involve testimony by a separate VE, Plaintiff's request for reversal based on the ALJ's reliance on VE testimony is rendered moot.

## V. CONCLUSION

For the above stated reasons, Plaintiff's motion for judgment on the administrative record (DE 12) is GRANTED. The Court hereby REVERSES the decision of the Commissioner and REMANDS this case for further proceedings consistent with this ruling.

An appropriate Order will accompany this memorandum.

BARBARA D. HOLMES
United States Magistrate Judge